IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALMA RAMIREZ,                         §
                                      §
            Plaintiff,                §
                                      §
v.                                    §     CIVIL ACTION NO. 2:03-372
                                      §
ALBERTO GONZALES, ATTORNEY            §
GENERAL OF THE UNITED STATES,         §
                                      §
            Defendant.                §

MEMORANDUM AND ORDER

Pending is Defendant Alberto Gonzales, Attorney General of the United States's Motion for Summary Judgment (Document No. 34).[1] After carefully considering the motions, responses, and the applicable law, the Court concludes as follows:

I.  Background

This is a discrimination and retaliation suit brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff Alma Ramirez ("Plaintiff"), a Hispanic female, alleges that she was discriminated against on the basis of her race/national origin and retaliated against when she was terminated as a probationary employee by the United States Attorney's Office for the Southern District of Texas, a component of the United States Department of

_____

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Attorney General Alberto Gonzales is substituted for former Attorney General John Ashcroft as Defendant in this case.

Justice ("Defendant").  In July, 2001, Plaintiff was hired by Defendant to work in its Corpus Christi office for a one-year probationary period as a Litigation Support Specialist. Plaintiff's primary duties were to provide technology and automated litigation services to Defendant's attorneys and support staff, assist Assistant United States Attorneys ("AUSAs") in trial preparation and presentations, coordinate and provide personnel training on litigation support equipment and research techniques, and develop databases and reports for litigation and administrative purposes.  Document No. 34 ex. 4 ¶ 8, ex. 10, ex. 12 at 8; Document No. 35 ex. 26 at 4.

Plaintiff alleges that throughout her employment with Defendant she was subjected to disparate treatment by her white supervisor, Debra Hohle ("Hohle").  Specifically, Plaintiff alleges that Hohle treated her like a secretary rather than as a Litigation Support Specialist and made her perform secretarial tasks such as answering the phone, serving as a receptionist, processing mail, and acknowledging visitors.  *See* Document No. 35 exs. 26 at 4, ex. 33 at 10, 136.  Plaintiff alleges that she was treated differently than two white employees, Dianna Winstead ("Winstead") and Julie Gerardi ("Gerardi"), both of whom demonstrated the same "deficiencies in conduct and performance" as Plaintiff, but were allowed to pass their probationary periods, while Plaintiff was terminated.  *See* id. ex. 26 at 5-6; ex. 33 at 102-104.  Plaintiff

2

also contests the manner in which she was terminated because Hohle discharged Plaintiff without providing her a formal, written counseling letter to warn Plaintiff of her deficiencies and allow her a chance to respond to the allegations.

Plaintiff further alleges that Hohle retaliated against her because of Plaintiff's friendship and association with Adel Garcia ("Garcia"), a Hispanic employee who had filed an EEOC charge of discrimination and retaliation against Defendant before Defendant employed Plaintiff.  *See* id. ex. 26 at 23.  Plaintiff alleges that Hohle openly commented about Plaintiff's association with Garcia, including an occasion when Hohle stated that she "saw us" when Plaintiff, Garcia, and Winstead attended a movie after work.  *See* id.

Plaintiff also alleges that she was retaliated against on the basis of an October, 2001, union grievance filed by American Federation of Government Employees ("AFGE") Union President Jeanell Walker ("Walker").  The grievance was filed on behalf of Hispanic support staff employees working in the Corpus Christi office, including Plaintiff, and alleged race/national origin discrimination and a hostile work environment.  *See* Document No. 35 ex. 10 at 22, 26; ex. 11; ex. 13.  Executive Assistant United States Attorney Albert Ratliff ("Ratliff") dismissed the complaint as not a proper "Union Grievance" under Article 22 of the Union contract.  *See* id. ex. 13.  Walker claims that she has not been notified of whether an

3

investigation of the allegations ever occurred.  *See* id. ex. 10 at 67.  Furthermore, in or about October, 2001, after a co-worker had filed a hostile work environment complaint, Plaintiff overheard several colleagues joking about the grievance and telling each other things like, "You are creating a hostile work environment." *See* id. ex. 26 at 23; ex. 21 at 66.  Plaintiff allegedly told the co-workers to stop and then reported their comments to Julie Gerardi, who was acting as Office Manager in Hohle's absence.  *See* id. ex. 26 at 23; ex. 21 at 66-67.  On January 7, 2002, Defendant terminated Plaintiff, allegedly for her "inability to follow office procedures essential to the proper handling of cases in the United States Attorney's office" and her "failure to recognize and react to office needs."  *See* Document No. 34 ex. 1 at 1.

Plaintiff alleges that her termination was unlawfully based on her race/national origin, and that Defendant retaliated against her for having objected to comments and behavior alleged to be in violation of Title VII.   Plaintiff seeks damages, injunctive relief, interest, attorney's fees, and costs.  Defendant moves for summary judgment on Plaintiff's claims, asserting that: (1) Plaintiff cannot establish a prima facie case of discrimination or retaliation; and (2) even if Plaintiff makes a prima facie case on her claims, she cannot raise a fact issue that Defendant's legitimate business reasons for its decision to discharge her were pretextual.

4

## II.   Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio

5

Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in
this light, could not lead a rational trier of fact to find" for
the nonmovant, then summary judgment is proper.  Kelley v. Price-
Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing
Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the
factfinder could reasonably find in [the nonmovant's] favor, then
summary judgment is improper."  Id.  Even if the standards of Rule
56 are met, a court has discretion to deny a motion for summary
judgment if it believes that "the better course would be to proceed
to a full trial."  Anderson, 106 S. Ct. at 2513.

## III.   Discussion

Title VII proscribes an employer from terminating or otherwise
discriminating against any individual because of that individual's
race or national origin.  42 U.S.C. § 2000e-2(a)(1).  The Title VII
inquiry is "whether the defendant intentionally discriminated
against the plaintiff."  Roberson v. Alltel Info. Servs., 373 F.3d
647, 651 (5th Cir. 2004).  Intentional discrimination can be
established through either direct or circumstantial evidence.
Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001).
Because Plaintiff presents no direct evidence of discrimination or
retaliation, her claims are subject to the burden-shifting
framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct.
1817 (1973).  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309,

6

316 (5th Cir. 2004).   Under this framework, the plaintiff must first create a presumption of intentional discrimination or retaliation by presenting evidence of a prima facie case.   Id. at 317.   The burden then shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for the underlying employment action.   Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000).   The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"   Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)).   If the employer sustains its burden, the inference of discrimination or retaliation falls away, and the burden shifts back to the plaintiff to establish that the employer's proffered reason is merely a pretext for discrimination or retaliation.   See Davis, 383 F.3d at 317.

A.   Plaintiff's Prima Facie Case

Plaintiff contends that Defendant discriminated against her by discharging her because she is Hispanic and retaliated against her for engaging in protected activity.   To establish a prima facie case of discriminatory discharge, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class, or others similarly situated were treated more favorably.   See

7

Wheeler v. BL Dev. Corp., 415 F.3d 399, 405 (5th Cir. 2005); *see also* Okoye v. Univ. of Tex. Houston Health Sciences Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).   To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action.   *See* Davis, 383 F.3d at 319; *see also* Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003).

It is undisputed that Plaintiff was a member of a protected class, and Plaintiff also has presented some evidence that she was qualified for the Litigation Support Specialist position she held, that she was terminated, and that she was replaced by Linda McCracken, a white female.[2]   *See* Document No. 35 exs. 6-8; ex. 22 at 10; ex. 36 ¶ 42.   Defendant does not challenge Plaintiff's evidence, and Plaintiff has therefore met her initial burden on the race discrimination claim.

_____

[2] With respect to the fourth element, Plaintiff also argues that white employees received more favorable treatment than she did.  Specifically, Plaintiff asserts that "similarly situated non-Hispanic employees, Diana [sic] Winstead and Julie Gerardi, . . . were allowed to pass probation and were treated more favorably by Debra Hohle under the same circumstances or similar circumstances."  Document No. 35 ¶ 62.   Defendant submits that these employees were not, in fact, similarly-situated because Plaintiff was the only Litigation Support Specialist in the Defendant's Corpus Christi office and had different job duties than the named, white employees.  *See* Document No. 34 at 8-9, 11.

8

In support of her retaliation claim, Plaintiff contends that the following acts constituted protected activities: (1) Plaintiff's association with an employee who had filed a previous EEOC charge of discrimination against Defendant; (2) Plaintiff's complaint to a supervisor that some co-workers were making inappropriate comments in regard to another co-worker's hostile work environment complaint; (3) a Union grievance filed by the Union President; and (4) Plaintiff's supervisor's alleged comments about Plaintiff's union membership.

First, Plaintiff contends that Defendant retaliated against her due to her friendship and association with Garcia, a Hispanic employee who had previously filed an EEOC charge of discrimination and retaliation against Defendant.  See Document No. 35 ¶ 13. Though the filing of an EEOC complaint is clearly a protected activity under Title VII, see Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005), Plaintiff does not allege that she was in any way involved in Garcia's protected conduct of filing an EEOC complaint.  The Fifth Circuit has found that an individual does not have automatic standing to sue for retaliation simply because a friend or spouse engaged in protected activity; rather, the individual herself must have participated in some manner in the protected conduct.  See Holt v. JTM Indus., Inc., 89 F.3d 1224, 1227, 1226 n.1 (5th Cir. 1996)(applying the holding to an ADEA case, but noting that "the anti-retaliation

provisions of the ADEA and Title VII are similar and 'cases interpreting the latter provision are frequently relied upon in interpreting the former'") (citing Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 n.5 (5th Cir. 1992)); *see also* Smith v. Riceland Foods, Inc., 151 F.3d 813, 819 (8th Cir. 1998) ("[W]e hold that a plaintiff bringing a retaliation claim under Title VII must establish that she personally engaged in the protected conduct"). Here, Plaintiff does not allege that she participated "in any manner" with Garcia's filing an EEOC complaint--either by way of helping to prepare her charge or by assisting in any way in its filing. *See* Holt, 89 F.3d at 1227. Plaintiff testified at her deposition that Garcia filed her EEOC charge before Plaintiff began her employment with Defendant, and she stated that she did not serve as a witness in the investigation of Garcia's complaint. *See* Document No. 35 ex. 9 at 69-70. As such, because Plaintiff's association with Garcia did not involve Plaintiff being personally engaged in protected conduct, Plaintiff's association with Garcia does not constitute a protected activity.

Plaintiff next argues that she engaged in a protected activity when she complained to Julie Gerardi, who was acting as Office Manager in Hohle's absence, that co-workers were making inappropriate comments about another employee who had filed a hostile work environment claim. Defendant challenges that Plain-tiff's complaint does not constitute a protected activity, but even

10

assuming it does, Plaintiff fails to raise a fact issue that there was a causal connection between the complaint to Gerardi and Plaintiff's ultimate termination approximately three months later. The Fifth Circuit has found that evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action is sufficient to satisfy a plaintiff's prima facie burden. *See*, *e.g.*, Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001); Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997)); *see also* Bregon v. Autonation USA Corp., 128 Fed. Appx. 358, 361 (5th Cir. Apr. 8, 2005) (unpublished). It is undisputed that Hohle--not Gerardi--was a decision maker in Plaintiff's termination. Plaintiff testified at her deposition that when she complained to Gerardi about her co-workers' comments, she asked Gerardi to inform Hohle of her complaint. *See* Document No. 35 ex. 21 at 66. Plaintiff states, however, that she does not know if Hohle ever learned of her complaint, that Plaintiff never raised the issue of inappropriate comments with Hohle herself, and that the inappropriate comments ceased the same day of her report to Gerardi and did not recur during the remainder of Plaintiff's employment with Defendant. *See* id. at 67-68. Moreover, there is nothing in Hohle's deposition testimony from which the Court could infer that Hohle ever heard of the complaint Plaintiff made to Gerardi, or that Hohle--a quarter of a year later--considered or

11

knew anything about it when she decided to terminate Plaintiff as a probationary employee. On this summary judgment record, to impute knowledge of Plaintiff's comments to Hohle--the pertinent decision maker--would amount to rank speculation. Plaintiff fails to raise a fact issue that a causal link existed between her allegedly protected activity and her job termination.

Plaintiff next submits that she engaged in a protected activity when Jeanell Walker, the Union President, filed a union grievance on behalf of the Hispanic support staff employees working in the Corpus Christi office, alleging race/national origin discrimination and a hostile work environment. Plaintiff cites no authority for the proposition that participation in union activities is protected under Title VII. *See, e.g.,* <u>Lee v. U.S. Postal Serv.</u>, 882 F. Supp. 589, 597 (E.D. Tex. 1995)("Title VII does not protect union activities; such activities are covered by other provisions of federal law"). Moreover, Plaintiff presents no evidence that she participated in some manner in the grievance-- either by providing information to Walker, by assisting in the filing, or by being identified in the process, *see* <u>Holt</u>, 89 F.3d at 1227; nor has Plaintiff established a causal connection between Walker's filing of the union grievance and Plaintiff's job termination.[3] In sum, the summary judgment record contains no

---

[3] Plaintiff also asserts an alleged comment attributed to Hohle about Plaintiff's participation in a union. Union President Walker avers that, during her investigation of Defendant's work

evidence from which it could be inferred that Defendant retaliated against Plaintiff for engaging in a protected activity.  Plaintiff has therefore failed to establish a prima facie case of retaliation.

B.    Defendant's Legitimate, Non-Discriminatory Reason

Because Plaintiff has met her initial burden of race/national origin discrimination on her discriminatory discharge claim, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination.  Defendant offers as an exhibit a one and a half-page letter of termination, in which Defendant explains the alleged deficiencies in Plaintiff's conduct and performance that led to her termination.  *See* Document No. 34 ex. 1.  Specifically, Defendant's termination letter cites (1) Plaintiff's failure to follow office procedures, such as

---

conditions, a legal secretary, Nora Longoria, informed Walker that Hohle said that Plaintiff "would be in trouble because she had been involved with a union when she worked for [her previous employer] the City of Corpus Christi."  *See* Document No. 35 ex. 24 ¶ 6. Defendant objects that this statement is inadmissible hearsay, presumably because Longoria's comment to Walker concerned a matter that was not within the scope of Longoria's scope of employment. *See* Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir. 1986)(statements excluded as hearsay because not within scope of employment where declarants relating what decision maker said were not involved in the company's discharge of plaintiff); *see also* Cole v. Frank's Casing Crew & Rental Tools, Inc., No.Civ.A. H-04-2566, 2005 WL 2647966, *6-7 (S.D. Tex. Oct. 17, 2005)(Rosenthal, J.)(same).  The objection is SUSTAINED and the statement is therefore STRICKEN.  Regardless, Plaintiff has cited no authority that participation in union activities constitutes a protected activity under Title VII.

failing to answer telephone calls after being instructed by Hohle
to do so, advising an AUSA that copying exhibits was not her job,
making excessive personal telephone calls, and leaving training
without permission; and (2) Plaintiff's failure to recognize and
react to office needs by failing to greet visitors when they
entered the office and by failing to mention the work she was doing
for an AUSA that had left the office unexpectedly.   *See* id.
Defendant has produced summary judgment evidence to substantiate
the letter's allegations.[4]   The termination letter concludes that
Plaintiff would be terminated because she had not fulfilled the
requirements of her position during her probationary period--a
conclusion that, if believed, constitutes a legitimate, non-
discriminatory reason for an employee's discharge.   *See, e.g.,*
Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir.
2002)("Poor work performance is a legitimate, non-discriminatory

---

[4] Specifically, Defendant produces deposition testimony from
three individuals stating that Plaintiff told them that she
would not assist in performing various tasks because it was not her job,
*see* Document No. 34 ex. 6 at 5-6, ex. 7 at 9-10, ex. 8 at 13;
testimony from a co-worker that observed Plaintiff making personal
phone calls and working on her checkbook during business hours, *see*
id. ex. 8 at 13-14; testimony from Hohle that Plaintiff's co-
workers complained about Plaintiff's failure to answer the phone
and take intake calls, for which Plaintiff was reprimanded, *see* id.
ex. 12 at 18; Hohle's testimony that Plaintiff left a database
training session early without permission, *see* id. ex. 12 at 16,
18; and Plaintiff's deposition testimony that she was unable to
create a complete working database, as was her job duty, and that
she ultimately had to start from scratch and model her database on
a version developed by an employee in another office, *see* id. ex.
9 at 153, 160.

reason for discharge"); Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993)("An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination"). Defendant has therefore satisfied its burden of production.

C.   Plaintiff's Showing of Pretext

At this point, the question becomes whether Plaintiff can raise a genuine issue of material fact that Defendant's proferred reasons for terminating her employment--namely, her poor job performance and conduct--are pretexts for race discrimination. Plaintiff challenges Defendant's characterization of her job performance in the termination letter, and she provides some explanations for the alleged job deficiencies.  For example, Plaintiff avers that she only made personal telephone calls in the mornings before work, that she left the training class early because the instructor told her that there was nothing else to cover, and that the caller who complained about Plaintiff's comments over the telephone misrepresented their telephone exchange. See Document No. 35 ex. 26 at 6-7, 9-10.   H o w e v e r , Plaintiff cannot survive summary judgment merely because she disputes or disagrees with Defendant's characterization of her work performance; rather, the proper inquiry is "whether [Defendant]'s perception of [Plaintiff]'s performance, accurate or not, was the

15

real reason for her termination." <u>Shackelford v. Deloitte &</u>
<u>Touche, LLP</u>, 190 F.3d 398, 408-09 (5th Cir. 1999); *see also* <u>Laxton</u>
<u>v. Gap, Inc.</u>, 333 F.3d 572, 579 (5th Cir. 2003) ("[The inquiry] is
not whether [the employer]'s proffered reason was an *incorrect*
reason for [the] discharge"); <u>Mayberry v. Vought Aircraft Co.</u>, 55
F.3d 1086, 1091 (5th Cir. 1995)("[E]ven an incorrect belief that an
employee's performance is inadequate constitutes a legitimate,
nondiscriminatory reason.  We do not try in court the validity of
good faith beliefs as to an employee's competence. Motive is the
issue . . . . [A] dispute in the evidence concerning . . . job
performance does not provide a sufficient basis for a reasonable
factfinder to infer that [the] proffered justification is unworthy
of credence") (quoting <u>Little v. Republic Refining Co.</u>, 924 F.2d
93, 97 (5th Cir. 1991)).  Here, Plaintiff has provided no evidence
that Hohle and the other decision makers involved in her
termination--namely Ratliff; the Lead AUSA for Corpus Christi,
Patti Booth; Personnel Officer Dell Mara Lovell; and Administrative
Officer Dick Kelly--did not perceive Plaintiff's work performance
and conduct to be substandard.  The uncontroverted summary judgment
evidence is that Hohle received a variety of complaints about
Plaintiff's job performance and conduct from numerous sources,
including Plaintiff's support staff colleagues, AUSAs, and an
outside telephone caller.  Plaintiff has provided no evidence from
which it can be inferred that Hohle knew that these multiple

complaints were false or incorrect.  Moreover, the fact that the same individual alleged to have racial animus--Hohle-both offered Plaintiff the position and terminated her six months later gives rise to an inference that discrimination was *not* Defendant's motive in terminating Plaintiff.  *See* Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 321 n.3 (5th Cir. 1997); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996)("[C]laims that employer animus exists in termination but not in hiring seem irrational")(quoting Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)); *see also* Cartagena v. Aegis Mortgage Corp., 275 F.3d 46 (5th Cir. Oct. 16, 2001) (unpublished).

Plaintiff also argues that Defendant's reasons for terminating her employment were pretextual because two white employees, Winstead and Gerardi, "were allowed to pass probation and were treated more favorably by Debra Hohle under the same circumstances or similar circumstances."  *See* Document No. 35 ¶ 62.  "[F]or a plaintiff to show disparate treatment, she must demonstrate 'that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained.'"  Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001)(alterations in original)(quoting Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990)(per curiam)).  The summary judgment record contains no evidence that Defendant treated Winstead and Gerardi more favorably

17

under nearly identical circumstances.  First, Plaintiff has not shown she was similarly situated to Winstead and Gerardi, both of whom held different positions than Plaintiff and with different job duties.[5]  Furthermore, while Plaintiff was a probationary employee, Gerardi was a permanent employee throughout Plaintiff's employment.  *See* id. ex. 4 ¶ 7.  Winstead completed her probation two months after Plaintiff started working for Defendant, *see* id. ¶ 6, and there is no summary judgment evidence from which to infer that Winstead passed probation notwithstanding engagement in misconduct that was nearly identical to Plaintiff's.[6]  As such, Plaintiff has

---

[5] Plaintiff was on probation as a Litigation Support Specialist whose main duties included providing technology and automated litigation services to Defendant's attorneys and support staff, assisting in trial preparation and case information tracking, and developing databases and reports for litigation and administrative purposes.  *See* Document No. 34 ex. 4 ¶ 8, ex. 10, ex. 12 at 8.  Gerardi, on the other hand, was a Paralegal Specialist who had her own office and acted as office manager when Hohle was absent.  Her duties as a Paralegal Specialist included legal research and writing, preparing pleadings, tracking and preparing Grand Jury materials, and a number of other complex responsibilities.  Winstead was a legal secretary who handled secretarial work for Defendant's civil attorneys.  *See* id. ex. 13; ex. 4 ¶ 2, 7; ex. 15 at 7.  Although Plaintiff implies that she is comparable to Winstead because she was also assigned secretarial work, the summary judgment evidence--including Plaintiff's self-prepared weekly reports of her work assignments--demonstrate that most of Plaintiff's tasks were not secretarial.  *See* id. ex. 17 (reflecting assignments such as developing a case log database, creating a client/agency list for use in mass mailings, creating and testing various database features, converting an attorney conference agenda to a poster, giving training presentations to staff, and preparing various data reports).

[6] Plaintiff avers that Hohle reprimanded Winstead for leaving the telephone unattended while she attended copier training and for filling out vouchers incorrectly.  *See* Document No. 35 ex. 32 at

failed to raise a genuine issue of material fact that she was similarly situated to but received less favorable treatment than Winstead and/or Gerardi due to race/national origin discrimination.

In sum, though Plaintiff may *believe* that her troubles with Defendant were motivated by discriminatory animus, Plaintiff has failed to produce any *factual* basis that her race or national origin was a motivating factor in Defendant's decision to terminate her. *See* <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc)("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing adequate non-discriminatory reason."). Because the summary judgment evidence does not permit an inference of intentional discrimination, Defendant's motion for summary judgment will be granted on Plaintiff's race discrimination and retaliation claims.

---

65-68. However, Plaintiff's termination letter accuses her of six performance deficiencies, including leaving training without permission, refusing to help an AUSA because it was not within her job duties, and failing to mention that she was working on an AUSA's exhibits when he was unexpectedly absent and "the entire office was reacting to cover the attorney's trial docket." *See* Document No. 34 ex. 1. The substance and volume of Winstead's alleged deficiencies, viewed in a light most favorable to Plaintiff, fall far short of Plaintiff's performance failures. They are not comparable.

IV.  <u>Order</u>

For the reasons set forth, it is hereby

ORDERED that Defendant Alberto Gonzales, Attorney General of the United States's Motion for Summary Judgment (Document No. 34) is GRANTED, and Plaintiff's claims of discrimination and retaliation are both DISMISSED on the merits.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas on this 23rd day of February, 2006.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

20